IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

JOHN USHER, #243 376            *

    Plaintiff,                 *

    v.                         *   2:09-CV-145-TMH
                                         (WO)
SGT. IBETH JONES, *et al.*,      *

    Defendants.                *
_____

**ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, John Usher ["Usher"], a state inmate, complains that Defendants deprived him of due process with respect to a behavior citation issued against him on February 14, 2009 for being in violation of institutional rules regarding allowable property and clothing. Specifically, during a routine shakedown Officer Keeton found a "play out watch" in Usher's lock box and noted that he had on a long-sleeve t-shirt which had not been issued by the prison. Usher names Sgt. Ibeth Jones and Officer Munchie Keeton as defendants. In a motion to amend filed on March 5, 2009 Usher requests that Keith Boyd, Mr. Davenport, Mr. Sconyer, Mr. Lawson, Mr. Wood, Mr. Bryant, and Mr. Allen be named as additional defendants to the complaint.[1] Usher requests damages and injunctive relief.

---

[1] Other than listing the names of the additional defendants he seeks to add as parties to the complaint, Usher does not assert any allegations against these individuals. (*See Doc. No. 4*.)

Upon review of the complaint the court concludes that dismissal of this case prior to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).[2]

## I. DISCUSSION

*A. The Due Process Claim*

Usher complains that Defendants denied him due process when they placed him in a hot dorm for violating institutional rules regarding allowable property and clothing. In support of his due process claim, Usher maintains that Defendants make their own "laws" which includes creation of a hot dorm in which to lock up inmates - a punishment not provided for in institutional regulations. He further conclusorily asserts that Defendants alter and falsify documents. The court further understands Usher to complain that as a result of his placement in the hot dorm for violating institutional rules, his access to the law library is limited, meal time is shortened, he may not leave the hot dorm to attend church services, he lost store privileges and other privileges for 30 days, and he was not allowed to be heard on the behavior citation even though he maintains it is used as a major disciplinary. (*Doc. No. 1 at pg. 3*.) Under the circumstances of this case, Usher's due process challenge entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an

---

[2] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the court to dismiss a prisoner's civil action prior to service of process, regardless of the payment of a filing fee, if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal

limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations imposed upon Usher based on behavior citation did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484. This court must therefore determine whether the actions about which Usher complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court recently noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515

> U.S., at 481, 115 S.Ct. 2293.  In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.*  Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of privileges, limited law library time, shortened meal times, temporary inability to attend institutional church services, and inability to be heard on the behavioral citation, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Usher. *Id*. at 485.  In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Consequently, Usher's

theory of liability under the law as established in *Sandin* is indisputably meritless and, therefore, frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). *See Neitzke v. Williams*, 490 U.S. 319 (1989).[3]

*B. The Cruel and Unusual Punishment Claim*

Usher maintains that the actions taken against him based on his behavior citation constitute cruel and unusual punishment in violation of the Eighth Amendment. This claim is without merit.

The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). None of the deprivations resulting from the behavior citation establish a sufficiently grave deprivation denying minimal civilized measures of life's necessities so as to rise to the level of cruel and unusual punishment. Such claim is, therefore, due to be dismissed pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. CONCLUSION

Accordingly, it is

ORDERED that Plaintiff's motion to amend (*Doc. No. 4*) be DENIED. *See Potter*

---

[3] Although *Neitzke* interpreted the provisions of 28 U.S.C. § 1915(d), the predecessor to § 1915(e)(2), the analysis contained therein remains applicable to the present statute.

*v. Clark,* 497 F.2d 1206, 1207 (7th Cir. 1974) (*per curiam*) (court properly dismissed complaint that was silent as to defendant except for his name appearing in caption).

It is the RECOMMENDATION of the Magistrate Judge that this case be DISMISSED with prejudice prior to service of process pursuant to the directives of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

It is further

ORDERED that on or before **March 26, 2009** the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc*)*, adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 13th day of March 2009.

                                       /s/ Wallace Capel, Jr  
                                      WALLACE CAPEL, JR.  
                                      UNITED STATES MAGISTRATE JUDGE